## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| ALEXIS SANCHEZ, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>CAVENDER STORES, LTD.,<br><br>                        Defendant. | Case No. 4:22-cv-01016-ALM<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Judge Amos L. Mazzant, III |

## I.    INTRODUCTION

Plaintiff Alexis Sanchez, on behalf of himself and all others similarly situated, hereby respectfully requests that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.

After several weeks of arm's-length negotiations and a March 7, 2023, mediation session with Mr. Bruce Friedman, an experienced mediator with JAMS, where the key terms were finalized, the Plaintiff and Defendant Cavender Stores, Ltd. ("Defendant" or "Cavender's") reached the Settlement Agreement (the "Settlement" or "S.A.") attached hereto as **Exhibit 1**. The Settlement provides timely and excellent benefits to the Settlement Class. Under the Settlement, Settlement Class Members are eligible to recover compensation for up to $500 of ordinary out-of-pocket expenses, up to $2,500 in extraordinary out-of-pocket expenses, up to $25 per hour for up to three hours of lost time, and two years of credit monitoring protection. In addition, Cavender's will undertake commitments to implement or maintain additional data security measures at its own expense and separate from the other settlement benefits for the Settlement Class. As detailed

herein, the Settlement surely satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing RG2 as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Alexis Sanchez as Representative of the Class; (6) appointing Raina Borrelli of Turke & Strauss LLP as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiff's service award.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide the Settlement Class Members with substantial monetary relief without the risk of delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

## II.   STATEMENT OF FACTS

### A.  Cavender's Business

Cavender's is a western clothing retail store with nearly 100 locations spanning multiple states. Compl. ¶2. As a result, it collects and stores the PII and PHI of thousands of its current and former employees. *Id*. ¶3, 20. It also collects the names and information of employees' children and stores that information in its systems. *Id*.

2

### B.  The Data Incident

On April 27, 2022, Cavender's experienced a phishing ransomware attack perpetrated by the cybercriminal group "Black Basta," which is a notorious ransomware group. *Id*. ¶¶18, 25, 26. Using a phishing email and subsequent ransomware attack, cybercriminals breached Cavender's systems and stole the PII and PHI of Cavender's current and former employees and their children, including addresses, Social Security numbers, financial account numbers, credit card numbers, debit card numbers, medical information, health insurance information, and the names of employees' children. *Id*. ¶19. Cavender's identified the attack on April 29, but it was unable to prevent the stolen information from being leaked. *Id*. ¶¶18, 21. One website reported that "100%" of the files stolen from Cavender's were published. *Id*. ¶25. Following this incident, Cavender's mailed notice to affected persons in July 2022. *Id*. ¶¶21, 24. Plaintiff, a former employee of Cavender's, is a victim of this Data Incident, along with approximately 27,237 others current and former employees and their children. *See id*. ¶¶22, 31, 33. Cavender's denies these allegations and denies that Plaintiff and the Settlement Class are entitled to any relief. S.A. § III.

### C.  Procedural History

Following Cavender's notification to those affected by the Data Incident and an investigation by Settlement Class Counsel, Plaintiff filed this class action lawsuit against Cavender's in this Court on November 29, 2022. *See* Compl. Plaintiff alleged that, as a result of the Data Incident, Cavender's was liable for negligence and negligence *per se*, breach of implied contract, breach of fiduciary duty, intrusion upon seclusion/invasion of privacy, unjust enrichment, and declaratory and injunctive relief. *Id*.

Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties agreed to mediate on March 7, 2023, with Bruce Friedman from JAMS. Borrelli Decl. ¶8. After

agreeing to mediate and prior to the mediation, the parties negotiated a number of preliminary terms, including a structure for the settlement. *Id*. ¶7. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id*. It wasn't until receiving the assistance of Mr. Friedman that the parties were able to reach final agreement. *Id*. ¶8. A term sheet was agreed to on March 7, and in the weeks that followed, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id*. ¶¶8-9. The Settlement Agreement was finalized and executed on May 3, 2023. *See* Ex. A. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiff and Settlement Class Members.

### D.  The Settlement Terms

#### 1.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "All persons who were sent written notification by Cavender Stores Ltd. that their Private Information was potentially compromised as a result of the Data Incident discovered by Cavender Stores Ltd. in April 2022." S.A. ¶ 1.24.

Private Information includes, but is not limited to, individual names, addresses, dates of birth, Social Security numbers, driver's license numbers, bank account numbers, treatment information, and/or health insurance information (including health plan information), and any other types of personally identifiable information collected or maintained by Cavender's leading to notification regarding the Data Incident. S.A. ¶ 1.16. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as Settlement Class Members.

### 2. Settlement Benefits

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members and, significantly, there is no cap on the amount that will be paid for monetary claims, ensuring that every valid claim will be paid. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

### a. Compensation for Documented Ordinary Losses

Settlement Class Members are eligible to receive compensation for up to $500 of their ordinary losses, to include documented out-of-pocket expenses, lost time, and documented fees for credit reports, credit monitoring, or other identity theft insurance products that were incurred as a result of the Data Incident through submission of a valid and timely claim and supporting documentation. S.A. ¶ 2.1.1.

### *1. Documented Out-Of-Pocket Expenses*

Documented ordinary out-of-pocket expenses include unreimbursed bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. The expenses must have been incurred between April 27, 2022, and the Claims Deadline, which is 90 days after notice is sent. S.A. ¶¶ 2.1.1(a), 2.1.3.

### *2. Documented Fees*

Documents fees for credit reports, credit monitoring, or other identify theft insurance products purchased between April 27, 2022, and the Claims Deadline are also recoverable, subject to the $500 cap. S.A. ¶ 2.1.1(b).

### *3.  iii. Reimbursement for Attested Lost Time*

Additionally, the Settlement also allows Settlement Class Members who have spent at least one full hour dealing with the Data Incident to claim up to three hours of lost time at $25 per hour by submitting a claim attesting to the number of hours spent responding to issues raised by the Data Incident and checking a box describing how the claimed lost time was spent. S.A. ¶ 2.1.1(c). Claims for lost time may be combined with claims for documented out-of-pocket expenses and documented fees for credit reports, credit monitoring, or other identity theft insurance products and are subject to the same $500 cap. *Id.*

### b.  Compensation for Documented Extraordinary Losses

Settlement Class Members who submit a valid and timely claim are also eligible to recover for up to $2,500 of their documented and unreimbursed extraordinary losses "more likely than not caused by" the Data Incident occurring between April 27, 2022, and the Claims Deadline. S.A. ¶ 2.1.2. This claims category ensures that those who suffer significant and unreimbursed economic loss due to identity theft or other fraud due to the Data Incident can recover for that loss.

### c.  Credit Monitoring Protections

In addition to the financial and temporal loss reimbursements, Plaintiff negotiated for significant additional credit monitoring services for the Settlement Class. All Settlement Class Members that previously enrolled in the credit monitoring offered by Defendant at the time it provided notice of the Data Incident shall have the term of the credit monitoring automatically extended by one year. S.A. ¶ 2.3. Any Settlement Class Member who did not previously enroll for credit monitoring offered by Defendant shall have the ability to make a claim for two years of credit monitoring under the same service previously offered by Defendant. *Id.* This Settlement

benefit bears with it significant value, and Cavender's will pay for this benefit separate and apart from the other benefits offered by the Settlement. *Id.*

### d. Equitable Relief

Separate from and in addition to the other Settlement Benefits described above, Cavender's agrees to implement or maintain additional data security measures and improvements. S.A. ¶ 2.4.

### e. Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement Class. Borrelli Decl. ¶8. Cavender's will pay the costs of notice to the Settlement Class, costs of Claims Administration, and the costs of dispute resolution. S.A. ¶¶ 2.6, 3.2. Cavender's will also pay for Plaintiff's attorneys' fees, costs, and expenses, and service award to Plaintiff. S.A. ¶¶ 3.2, 7. Cavender's will pay the attorneys' fees, not to exceed $162,500, in addition to any benefits provided to Settlement Class Members and the cost of Settlement administration. S.A. ¶¶ 7.1, 7.2. Cavender's will also pay an additional $8,475 to Plaintiffs' Counsel for reimbursement of costs incurred. S.A. ¶ 7.2. Plaintiff shall seek, and Cavender's agrees to pay, a service award to Plaintiff of $2,500, subject to Court approval. S.A. ¶¶ 7.1, 7.3. This amount is separate and apart from any other sums agreed under the Settlement. S.A. ¶ 7.5. Settlement Class Counsel will separately petition the Court for such fees, costs and expenses no later than 14 days prior to the objection deadline, unless the Court orders otherwise. S.A. ¶ 7.5.

### 3. Notice to Class Members

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator, RG2, will collect Settlement Class Member information and distribute notice through two means. To start, the Claims Administrator will create a website where it will post all documents relating

to this case and the Settlement, including all claim forms needed to submit a claim. S.A. ¶ 3.2(c). Then, because Cavender's has mailing addresses for Settlement Class Members, the Settlement Administrator will engage in a direct mail campaign. S.A. ¶¶ 3.2(a), (d). If that mailer is returned "undeliverable," the Settlement Administrator will skip trace the Settlement Class Member's address and mail notice at any address it finds through that process. S.A. ¶ 3.2(d). Under the Settlement Agreement, the Settlement Administrator will start this process within 45 days after the Court preliminarily approves the settlement. S.A. ¶ 3.2(d).

### 4. Claims, Objections, Opt-Outs, and Termination

Settlement Class Members will have 90 days from the day the Claims Administrator notifies the Settlement Class to submit claims. S.A. ¶¶ 2.1.3, 3.3. This claims period will allow Settlement Class Members to recover for fraud, identity theft, ordinary losses, and lost time that does not occur immediately after the Data Incident (which is often the case when PII is stolen by cybercriminals). The Claims Administrator will adjudicate all claims, including by reviewing any documents a claimant attaches to support their claim. S.A. ¶¶ 2.5.1, 3.3. Settlement Class Members will have 21 days to address any defects identified by the Claims Administrator, who will determine whether the Settlement Class Member has cured them. S.A. ¶¶ 2.5.2, 2.5.3. If the Claim Administrator rejects a claim in whole or in part, then the claim shall be referred to the claims referee, who has 15 days to make a final and non-appealable ruling. S.A. ¶¶ 2.5.3, 2.5.4.

Settlement Class Members may opt-out from receiving from receiving the Settlement's benefits by sending written notice to the Claims Administrator clearly manifesting their intent to be excluded from the Settlement Class. S.A. ¶ 4.1. Settlement Class Members opting out must notify the Claims Administrator within 60 days from the day the notice program commences. S.A. ¶ 4.1. The parties conditioned their Settlement on this Court's approval, meaning it will terminate

if the Court rejects its terms, S.A. ¶ 2.7, or if more than 100 timely and valid Opt-Outs are submitted, S.A. ¶ 4.3.

Settlement Class Members may also object to the Settlement within 60 days from the day the notice program commences a timely written notice of their objection must be filed with the Clerk of Court and contain the case name and docket number Sanchez v. Cavender Stores, Ltd., Case No. 4:22-CV-01016-ALM (the "Cavender's Action"), and served concurrently upon Settlement Class Counsel, Raina Borrelli of the law firm TURKE & STRAUSS LLP, 613 Williamson Street, Suite 201, Madison, WI 53703, and counsel for Cavender's, Michelle Gomez and Casie Collignon, Baker & Hostetler, LLP, 1801 California Ste. 4400, Denver, Colorado 80202. S.A. ¶ 5.1. To object, an objector need only state their contact information, establish themselves as a Settlement Class Member, state all grounds for their objection, identify all other objections to any proposed class action settlement they have made in the last three years, identify all counsel representing them, explain whether they will appear at the Final Fairness Hearing, and sign the objection. S.A. ¶ 5.1.

### 5. Release

To receive the Settlement's Benefits, Plaintiff and Settlement Class Members agree to release Cavender's for all claims and causes of action asserted or that could have been asserted by any Settlement Class Member based on, relating to, concerning or arising out of the Data Incident. S.A. ¶¶ 1.21, 6.1.

## III.  ARGUMENT AND HISTORY

### A.  Class Action Settlement Approval Process

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial

evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).

Plaintiff asks the Court to take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. Because no class has been certified, "the judge should [also] make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." William B. Rubenstein, *Newberg on Class Actions* § 13:18 (5th ed. June 2019 update) (citation omitted). Judicial and public policy favors the resolution of disputes through settlement. *See ODonnell v. Harris Cty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Settlement Agreements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiff's motion and allow notice to be provided to the class.

### B.  The Settlement Satisfies the Criteria for Preliminary Approval

At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2009 WL 10670041, at *6 (W.D. Tex. Jan. 8, 2009); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standards at the preliminary approval stage are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. at 314-315.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id*. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's

fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors—known as the Reed factors—for determining whether a settlement was fair, adequate, and reasonable, including: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiff prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See Stott v. Cap. Fin. Servs. Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because Rule 23 and the *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements. *See ODonnell*, 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state: "The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

The public interest strongly favors the voluntary settlement of class actions and there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. See *Hays*, 2019 WL 427331, at *9; *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside

the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." *O'Donnell*, 2019 WL 4224040, at *7 (quoting 2 McLaughlin on Class Actions, § 6:7 (15th ed. 2018)). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

### 1. The Settlement is the product of serious, informed, and arm's-length negotiations.

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the result of negotiations among experienced counsel and with considerable assistance from a well-respected mediator, Bruce Friedman. Borrelli Decl. ¶¶6-8. In the weeks leading up to the mediation, the parties exchanged key information needed to inform their strategies, including the size of the class, the types of data involved in the breach, and the number of individuals who enrolled in the credit monitoring offered by Cavender's at the time it sent notice of the Data Incident. *Id.* ¶¶6-7. This allowed the parties to simultaneously agree on several terms of the Settlement prior to mediating with Mr. Friedman. *Id.* Mr. Friedman then assisted the parties in coming to resolution on all substantive terms of the Settlement. *Id.* ¶8. Throughout all negotiations, Settlement Class Counsel and counsel for Cavender's fought hard for the interests of their respective clients. *Id.* ¶8. Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. *Id.* ¶¶16-18, Ex. A. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during those

negotiations—favor preliminary approval of the Settlement because they strongly indicate a lack of collusion in the final result.

### 2. The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members.

The benefits made available to Class Members as a result of this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated for their out-of-pocket costs, their time, and extraordinary losses resulting from fraud. This recovery ensures that every Settlement Class Member that submits a valid claim will receive adequate compensation for the harms that they have suffered as a result of the Data Incident. Moreover, to prevent any additional harm from occurring and to protect from fraud, Settlement Class Members are entitled to one additional year of credit monitoring. S.A. ¶2.3. Finally, Cavender's has agreed to make and maintain improvements to its cybersecurity that will protect Settlement Class Members' PII that remains in Cavender's possession. S.A. ¶2.4. These benefits are immediate and significant, and Settlement Class Counsel acknowledges that it is possible that the Class could receive nothing if the case is litigated to trial. Borrelli Decl. ¶12.

For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g. In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same). Plaintiff also recognizes the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Settlement Class

14

Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation, 61 B.C. L. REV. 1223, 1235 (2020).  As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party.  This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation.

Further, the Settlement treats all Settlement Class members fairly and equally. Each Settlement Class member is entitled to file a claim to obtain settlement benefits. The total amount of the Settlement—which was the product of vigorous negotiations—is fair, reasonable and adequate in light of the risks the Plaintiff and Settlement Class faced and the potential damages available.

### C.  Preliminary Certification of the Settlement Class is Appropriate

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant*, No. 3:20-CV-3042, 2020 WL 5258454, at *4 (E.D. La. Sept. 2, 2020) (citing Fed. R. Civ. P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Indeed, courts have been certifying similar nationwide classes in data breach cases. *See, e.g., In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), reversed on other grounds, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). This case should similarly be certified for settlement purposes only.

### 1.  The Settlement Class satisfies the requirements of Rule 23(a).

#### a.  Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class clearly

surpasses the threshold required to establish numerosity. As the Settlement Class includes approximately 27,237 individuals, judicial economy would be well-served by certification.

### b. Commonality

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Plaintiff here easily meets the commonality requirement because he can demonstrate numerous common issues exists. For example, whether Cavender's failed to adequately safeguard the records of Plaintiff and Settlement Class members is a question common across the entire class. The adequacy of Cavender's data security safeguards are common across the Settlement Class, and the safeguards applied to the data of one Settlement Class Member do not differ from those applied to another. Other common issues include but are not limited to:

- Whether Cavender's failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Cavender's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and

- Whether Cavender's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiff in his Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class wide basis. Plaintiff thus has met the commonality requirement of Rule 23.

### c. Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the phishing ransomware attack on Cavender's computer system—and the cybersecurity protocols that Cavender's had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data. Plaintiff's claims are typical of the Settlement Class Members' and typicality is satisfied.

### d. Adequacy

To be adequate, Plaintiff must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiff's interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. Plaintiff's and Settlement Class Members' PII was all allegedly compromised by Cavender's in the same manner. Moreover, the Settlement Agreement provides that Plaintiff and Settlement Class Members are all eligible for the same reimbursement of ordinary

losses, including out-of-pocket expenses, lost time, extraordinary losses, and credit monitoring services, as well as data-security enhancements. Though Plaintiff will be seeking a $2,500 award for his service on behalf of the Settlement Class, this award is the same amount that can be recovered by any Settlement Class Member for documented and unreimbursed extraordinary losses. This amount is also justified by the benefits brought to the Settlement Class by the work of Plaintiff.

Finally, Settlement Class Counsel have decades of combined experience litigating class actions, in particular in the data breach context. Settlement Class Counsel are particularly well-suited to advocate and litigate on behalf of the Settlement Class. *See* Borrelli Decl. ¶¶10, 16-18, Ex. A. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### 2.  The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### a.  Predominance

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Cavender's had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class Members, and whether Cavender's breached that duty. The common questions that arise

from Cavender's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. Carecentrix, Inc.*, Case No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No.: 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

### b.  Superiority

Second, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the same Data Incident. Because the common questions of fact

20

and law that arise from Cavender's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

### D.  The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil Procedure 23. *See* S.A. Exs. A-B. Here, the Settlement provides for direct and individual Notice to be sent via first class mail to each Settlement Class Member. S.A. ¶3.2(d). In the event the Short Notice is returned because the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator will re-send the Short Notice to the forwarding address within seven days of receiving the returned Notice. S.A. ¶3.2(d). If a Short Notice is returned to the Claims Administrator at least fourteen days before the Opt-Out Date and Objection Date, and there is no forwarding address, the Claims administrator will perform a standard skip trace to ascertain the current address of the Settlement Class Member and resend Notice within seven days. S.A. ¶3.2(d).

In addition to disseminating Notice via direct mail, the Claims Administrator will establish the Settlement Website where all versions of the Settlement Notice will be available to Settlement Class Members, along with all relevant filings. S.A. ¶3.2(c). The Claims Administrator will also make a toll-free telephone number available for any Settlement Class Member to seek answers to questions or request a Notice or Claim Form be mailed to their address. S.A. ¶3.2(f).

The Notices themselves are clear and straightforward. S.A. Exs. A-B. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id*. The Notices disclose the essential terms of the Settlement Agreement, including the Service Award request for the Class Representative and the amount Settlement Class Counsel intends to seek in fees, costs, and expenses. *Id*. The Notices explain the procedures for making claims, objecting, and requesting exclusion and provides Settlement Class Members with information that enables them to calculate their individual recovery. *Id*. Finally, the Notices alert the Settlement Class Members to the date, time, and place of the Final Fairness Hearing and to the contact information for Settlement Class Counsel. *Id*.

The proposed direct mail Notice is the gold standard and is consistent with other Notice programs approved in the Fifth Circuit. *See Stott*, 277 F.R.D. at 342 (approving notice sent to class members by first class mail); *Billitteri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23 requirements and should be approved by the Court. *See* U.S. Const., amend. XIV; Tex. Const., art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(b) & (e)(1).

### E.  The Court Should Appoint the Claims Administrator

In connection with the notice plan and settlement administration, the Parties request that the Court appoint RG2 to serve as the Claims Administrator. RG2 has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Borrelli Decl. ¶9.

### F.  The Court Should Appoint the Class Representative

Plaintiff should be provisionally appointed Class Representative. As set forth above, he has represented the Settlement Class with no conflict of interest or antagonism between himself and other members of the class. His PII, like the PII of the Settlement Class Members, has been impacted in the same Data Incident, and, as a result, Plaintiff has the same interests as the Settlement Class Members. *See* Borrelli Decl. ¶4. Moreover, Plaintiff has capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*. Finally, Plaintiff has been informed about the nature of a class action and the potential advantages and disadvantages by proceeding in a class action rather than individually. *Id*.

### G.  The Court Should Appoint Settlement Class Counsel

Plaintiff requests appointment of Attorney Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Borrelli Decl. ¶¶10, 16-18, Ex. A.

## IV.    CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiff respectfully requests that this Honorable Court enter an Order:

1) Preliminarily approving the Settlement;

2) Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

3) Appointing RG2 as Settlement Administrator;

4) Approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C) attached to the Settlement Agreement;

5) Appointing Alexis Sanchez as Representative of the Class;

6) Appointing Raina Borrelli of Turke & Strauss LLP as Settlement Class Counsel;

7) Scheduling a Final Fairness Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiff's service awards to be held at least 160 days after entry of the Preliminary Approval Order; and

8) Such other relief as the Court deems just and proper.

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), I hereby certify that I conferred with counsel for Defendant Cavender Stores, Ltd. regarding the above-referenced motion for preliminary approval of class settlement. Defendant does not oppose the relief requested therein.

Dated: May 4, 2023                     Respectfully Submitted,

By: *Raina C. Borrelli*
    Raina C. Borrelli (*pro hac vice*)
    TURKE & STRAUSS LLP
    613 Williamson Street, Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423
    raina@turkestrauss.com

Joe Kendall
KENDALL LAW GROUP PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 4th day of May, 2023.

TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
    Raina C. Borrelli
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423